**In the Matter of S.B.**

**No. 2–01–350–CV.**

Court of Appeals of Texas,
Fort Worth.

Aug. 29, 2003.

James Polk, Dallas, for Appellant.

Bruce Isaacks, Criminal Dist. Atty., Kathleen Walsh, Emma O. Guzman, Dan Peugh, Sheila Bowles, Asst. Dist. Attys., Denton, Matthew Paul, State Prosecuting Atty., Austin, for Appellee.

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

Appellant S.B., a juvenile, appeals from an order of adjudication of delinquency and disposition of two years' probation, which the trial court entered after a jury found she had engaged in delinquent conduct by committing aggravated assault with a deadly weapon. She raises two issues: (1) the trial court erred by including terroristic threat in the charge as a lesser included offense of aggravated assault; and (2) there was legally insufficient evidence to support the verdict of true to the charge of aggravated assault with a deadly weapon.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and D.F., the alleged victim, were both students at Hebron High School in 2001. While at school on March 2, 2001, D.F. felt water being sprayed on him during his first period class and thought that Appellant was the person who sprayed him. D.F. told Appellant that he was going to get her back. Later that day, D.F. approached Appellant near the school weight room and spit a mouthful of water on her. Appellant stated that a mixture of water and D.F.'s slobber hit the top of her face, went into her eyes, and dripped down her face. D.F. admitted that some of the water reached Appellant's clothes; although he was unsure if any reached her face. D.F. then went inside the weight room to work out. Shortly thereafter, Appellant went into the weight room and, according to her, demanded an apology from D.F.

Approximately eighty to ninety people were in the weight room, including the entire varsity football squad, of which D.F. was a member, and two male coaches. Because only the boys were supposed to be in the weight room at that time, Coach Sam Harrison told Appellant to leave. Appellant obeyed his instruction and left the room. She then went to another coach to tell him about D.F. spitting water in her face; however, the coach laughed about what she told him and otherwise ignored her complaints.

A few minutes later, she went back inside the weight room, this time with a blue aluminum baseball bat in hand. D.F. testified that Appellant stopped fifteen to eighteen feet from him. Appellant estimated that she stood between ten and fifteen feet from D.F. Several witnesses testified that she came within various distances, and some witnesses testified that they observed her holding the bat in an

upright position with the wide end next to her head. Appellant and another witness, however, testified that she was holding the bat at her side.

Appellant yelled at D.F., which caused him to take a couple of steps back. While Appellant admitted to having "a verbal exchange and conversation," D.F. quoted Appellant as saying, "You don't fucking know me. I'll fucking hit you." At some point, Coach Harrison saw Appellant holding the bat in the air while yelling at D.F., and he again told Appellant to leave the weight room. Coach Harrison and another witness then observed Appellant lower the bat, turn to leave the room, and then raise the bat again while looking at Coach Harrison. Coach Harrison stated that before Appellant exited the weight room, she told him, "I will beat the shit out of you, too."

Coach Harrison contacted the front office personnel, who eventually called the police to investigate the incident. Appellant was charged with aggravated assault for threatening D.F. with imminent bodily injury and using or exhibiting a baseball bat that, in its manner of intended use, was capable of causing death or serious bodily injury.[1] Appellant pleaded not true to the charge, and at the ensuing contested adjudication, a jury found beyond a reasonable doubt that Appellant had engaged in delinquent conduct as alleged in the petition. Following a disposition hearing, the court placed Appellant on probation for two years and required that she complete 100 hours of community service.

### III. LEGAL SUFFICIENCY

In her second issue, Appellant complains that the evidence was legally insufficient to support the jury's finding of true on the charge of aggravated assault. Specifically, Appellant argues that there was no evidence that she threatened D.F. with imminent serious bodily injury or that she used or exhibited a deadly weapon during the commission of the assault on D.F. The State counters that the evidence was legally sufficient to support the jury's verdict. We agree with Appellant.

### A. Standard of Review

Consistent with fundamental due process requirements, no person may be convicted of a criminal offense unless criminal responsibility for the offense is proved beyond a reasonable doubt. U.S. CONST. Amend. XIV; *Alvarado v. State*, 912 S.W.2d 199, 206–07 (Tex.Crim.App.1995) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)). When juvenile appellants complain that the evidence was legally insufficient to support the adjudication of delinquency, we apply the criminal standard of review, which is more stringent than the "no evidence" standard applicable in civil cases. *In re J.D.P.*, 85 S.W.3d 420, 422 (Tex.App.-Fort Worth 2002, no pet.). The relevant question is not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In reviewing the legal sufficiency of the evidence under the criminal standard, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct.

---

1. D.F. received a citation for the Class C assault of offensive contact-apparently for spitting water on Appellant.

2781; *Burden v. State,* 55 S.W.3d 608, 612 (Tex.Crim.App.2001). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

In determining the legal sufficiency of the evidence, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). The standard of review is the same for direct and circumstantial evidence cases. *Burden,* 55 S.W.3d at 613; *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

## B. Aggravated Assault with a Deadly Weapon

A person commits aggravated assault with a deadly weapon if he or she intentionally or knowingly threatens another with imminent bodily injury and if he or she uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE. ANN. § 22.02(a)(2) (Vernon 2003). Here, the State's petition alleged that Appellant, in violation of section 22.02, intentionally and knowingly threatened D.F. with imminent bodily injury and used or exhibited a deadly weapon, namely, a baseball bat.

### 1. Deadly Weapon

■ We first review the legal sufficiency of the evidence to support the "deadly weapon" element of aggravated assault. Under the penal code, a deadly weapon is:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17)(A, B). A baseball bat is not designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *Id.* § 1.07(a)(17)(A); *Hammons v. State,* 856 S.W.2d 797, 800 (Tex.App.-Fort Worth 1993, pet. ref'd). Thus, a baseball bat is not a deadly weapon *per se. Hammons,* 856 S.W.2d at 800; *Warren v. State,* 764 S.W.2d 906, 908 (Tex.App.-Corpus Christi 1989, pet. ref'd).

■ Accordingly, we must determine whether the State adduced legally sufficient evidence that Appellant used or intended to use the bat in a manner that was capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *McCain v. State,* 22 S.W.3d 497, 503 (Tex.Crim.App.2000); *Hill v. State,* 913 S.W.2d 581, 582–83 (Tex. Crim.App.1996). The court of criminal appeals has approved of several factors that may be considered in determining whether an object is a deadly weapon: (1) the physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Tisdale v. State,* 686 S.W.2d 110, 111 (Tex.Crim.App.1984); *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983); *Williams v. State,* 575 S.W.2d 30, 32–33

(Tex.Crim.App. [Panel Op.] 1979); *see also Charleston v. State*, 33 S.W.3d 96, 100 (Tex.App.-Texarkana 2000, pet. ref'd) (holding evidence was legally sufficient to support deadly weapon finding involving a wrench).

No one factor is determinative, and an appellate court must examine each case on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the object used was a deadly weapon. *Brown v. State*, 716 S.W.2d 939, 947 (Tex.Crim.App. 1986); *Charleston*, 33 S.W.3d at 100.

In the case at bar, the State presented the testimony of D.F. and ten other eye-witnesses to the encounter in the weight room. Appellant took the stand in her own defense, and she offered the testimony of one of her friends, who observed the events in the weight room. Appellant admitted to approaching D.F. and standing ten to fifteen feet away from him. She testified that she took the bat in for self-protection because she felt threatened, but that she held the bat at her side the entire time and never intended to hit D.F. Appellant claimed that she was "shocked, disgusted, and upset" during the whole ordeal.

Appellant's friend T.M., who observed the confrontation, testified that Appellant held the bat by her side, pointing it down. T.M. demonstrated how she saw Appellant holding the bat by holding the bat with her right hand choked up on the handle with the barrel down. T.M. testified that Appellant stood five to ten feet away from D.F.

D.F. testified that when Appellant approached him with the bat, she held it on her shoulder "like a baseball player kind of." Because he was startled by Appellant's actions, he stepped back as she got closer to him. However, D.F. further testified that Appellant never got close enough to hit him with the bat, that she never got closer than fifteen feet from him, and that it would have been "impossible" for her to have hit him with the bat from that distance. D.F. also explained that there were no obstacles in Appellant's way to prevent her from reaching him if she had wanted to do so. He testified that, while he felt threatened by what she said and by the way she was holding the bat, from where she was standing, he never felt threatened with imminent bodily injury.

Coach Harrison testified that when he saw Appellant the second time, she had the bat in her hand by her side with the head of the bat pointing forward. As Appellant approached D.F., Coach Harrison saw D.F. back up as she got closer and as she raised the bat, holding it with two hands parallel to her head. However, Coach Harrison could not hear what she was saying to D.F., although he said that Appellant was yelling and screaming profanities. After Coach Harrison got her attention, Appellant dropped the bat, and turned to leave. Coach Harrison testified she again raised the bat to him and said, "I will beat the shit out of you, too." In making his reports to the school authorities and the police, Coach Harrison reported only himself—not D.F.—as the victim of a criminal offense.

The State's eyewitnesses testified to various distances between Appellant and D.F. C.P. testified that he was on the weight bench lifting weights, with D.F. spotting for him when Appellant entered the room the second time. C.P heard D.F. say: "She has a bat." He just kept lifting weights, he said. He saw Appellant with a bat in her hand. She was cursing but he could not remember what she said. C.P. testified that she walked over to within two to three feet of D.F. C.P. also testified that D.F. backed up as Appellant walked toward him. He did recall that

D.F. told Appellant, "Quit playing." A.R. testified that Appellant and D.F. were standing "within a few feet of each other." C.H. testified that Appellant stood around six feet from D.F., and that she was close enough to hit him.

With respect to threats or words used by Appellant as she approached D.F., other than the words D.F. recalled Appellant using, only C.P. specifically heard or remembered any of Appellant's words. C.P. could not remember all of the specific words Appellant used, but that she was cussing and calling D.F. a bitch and a motherfucker. A.R. and T.B. recalled only that Appellant was yelling at D.F. as she approached him with the bat. I.Y. testified that Appellant kept saying to D.F., "What the hell did you spit in my face for?"

While the State did not offer the actual bat Appellant used to confront D.F., the court admitted a similar aluminum bat for demonstrative purposes. C.P. testified that the jury aid resembled the bat Appellant used, but C.P. also testified that he "didn't really pay attention exactly to how [Appellant's bat] looked," and he could not recall whether the bat admitted for demonstrative purposes was bigger or smaller than the bat Appellant had. Therefore, there was no evidence of the actual size or shape of the bat Appellant took into the weight room.

█ While there is no requirement for the State to introduce expert testimony to establish that an instrument is a deadly weapon, such testimony can be "particularly useful in supplementing meager evidence on the issue." *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Crim.App. [Panel Op.] 1980); *Hammons,* 856 S.W.2d at 801. In this case, the State produced no evidence concerning the capability of the baseball bat that Appellant actually used to inflict death or serious injury. *Denham*

*v. State,* 574 S.W.2d 129, 130 (Tex.Crim. App.1978); *Hammons,* 856 S.W.2d at 800. Likewise, the State adduced no evidence as to the relative sizes and strengths of Appellant and D.F. to show that the manner in which Appellant was using the bat was capable of causing D.F. death or serious bodily injury.

Indeed, most of the State's witnesses testified to and/or demonstrated only how Appellant was holding the bat. M.V. thought Appellant was threatening D.F. by the way she was holding the bat. M.V. demonstrated that Appellant held the bat in the air with two hands and with the wide part of the bat up over her right shoulder. Additionally, R.U. demonstrated that Appellant held the bat with the wide end in the air, even with her head. C.H. also testified that Appellant approached D.F. with a threatening posture, and he demonstrated that Appellant had her hand choked up several inches on the bat and held the wide end up even with her head. However, it was undisputed that Appellant never swung the bat, and she did not attempt to hit D.F. with it.

Other witnesses recalled that Appellant held the bat in various positions. C.P. testified that she was holding the bat in one hand as she walked over to D.F., "kind of down" at first, but then "kind of on her shoulder." According to A.R., Appellant held the bat to her side and did not move it. I.Y. testified that Appellant was holding the bat and "wiggling it around a little," but he did not see her raise the bat or swing the bat. He testified that he was standing by D.F. as Appellant approached, and he stated that he was far enough away that he never felt threatened. T.B. testified that Appellant held the bat in one hand.

Having examined all of the evidence and viewing it in the light most favorable to the

verdict, even disregarding the evidence contrary to the verdict, we hold that the evidence is legally insufficient to support the jury's finding that the baseball bat, in the manner of its use or intended use by Appellant, was capable of causing death or serious bodily injury; therefore, there was legally insufficient evidence that the bat constituted a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Brown,* 716 S.W.2d at 947; *Charleston,* 33 S.W.3d at 100; *see, e.g., Hester v. State,* 909 S.W.2d 174, 180 (Tex.App.-Dallas 1995, no writ) (holding evidence insufficient to support deadly weapon finding as to screwdriver where, among other things, there were no attempts to stab or actual stabbing of the victim, no verbal threats of serious bodily injury or death, and no expert or lay testimony on the capability of the actual screwdriver or one similar to it to cause death or serious bodily injury).

The dissent focuses on one statement by one witness, C.F., that Appellant came within two or three feet of D.F., but that witness did not say that Appellant wielded the bat like a baseball player, nor did he testify to any recollection that she made any threat to D.F. No witness other than D.F. testified to any threat by Appellant, and that was D.F., himself, who also testified that he was never in fear because it would have been impossible for her to strike him from the distance at which she stood when she made the statement that "[y]ou don't fucking know me. I'll fucking hit you." While we agree that the jury is free to believe or disbelieve all or part of the testimony of any witness, the scenario constructed by the dissent would require the jury to cobble together isolated statements to create, at most, "some evidence" that Appellant used or intended to use the bat in such a manner as to be capable of causing death or serious injury to D.F. "But it could not seriously be argued that such a 'modicum' of evidence could by

itself rationally support a conviction beyond a reasonable doubt." *Amunson v. State,* 928 S.W.2d 601, 611 (Tex.App.-San Antonio 1996, pet. ref'd) (quoting *Jackson,* 443 U.S. at 320, 99 S.Ct. at 2788–89) (Duncan, J. dissenting).

We also believe the cases are factually distinguishable that are relied upon by the dissent. In *Hammons,* the defendant used a baseball bat to facilitate another crime, brandishing the bat as he told the victim to empty his pockets, and he actually proceeded to beat the victim between his legs in his groin area and knees. 856 S.W.2d at 800. The victim testified he was afraid the defendant was going to "hurt me bad." *Id.* This court held that the victim's pain upon being struck, his fear of bodily injury, the repeated blows with the bat, the victim's demonstration of how the bat was used, and the fact that the defendant waited for the victim even after he fled to avoid further injury, was sufficient to establish that the bat was used as a deadly weapon. *Id.*

Likewise, in *Warren v. State,* the court of appeals held that the evidence was sufficient to establish that a baseball bat was used as a deadly weapon where the victim and his wife, who had pulled into a service station to wait out a rainstorm, testified the defendant and his son ran out with baseball bats and the defendant hit their truck, shattering the windshield and injuring the victim. 764 S.W.2d 906, 907 (Tex. App.-Corpus Christi 1989, pet. ref'd). The victim's wife testified that the defendant used the bat like a club, swinging it hard and bashing in the windshield, and she believed she would have been killed if she had not jumped back into the truck. *Id.* at 908. Her husband also testified as to the manner in which the defendant used the bat and that it would have killed a person if it had struck them. *Id.*

Finally, in the unreported case of *In re R.M.,* the probation officer complainant testified that, while visiting the defendant who was on juvenile probation, he held a golf club over his head from a distance or four or five feet as she attempted to turn off the television, looked her directly in the eye and told her he was going to kill her, and had to ultimately be restrained by police. No. 08–02–00105–CV, 2002 WL 31840968, at *1 (Tex.App.-El Paso 2002, no pet.) (not designated for publication). As each case must be examined on its own facts and in light of the surrounding circumstances, we remain convinced that a rational jury could not have concluded that Appellant used the baseball bat as a deadly weapon.

### 2. *Assault by Threat*

 We now address Appellant's contention that the State failed to produce legally sufficient evidence that Appellant intentionally or knowingly threatened D.F. with imminent bodily injury. Texas Penal Code section 22.01(a)(2) defines the offense of assault by threat as occurring when a person "intentionally or knowingly threatens another with imminent bodily injury." *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon 2003). Aggravated assault by threat is a nature-of-conduct offense. *See Guzman v. State,* 988 S.W.2d 884, 887 (Tex.App.-Corpus Christi 1999, no pet.). Accordingly, our focus is not on a victim's perception of the defendant's behavior; rather, we look at the acts and culpability of the defendant, that is, whether the defendant intended to cause or knowingly

"cause[d] in the victim a reasonable apprehension of imminent bodily injury." [2] *Edwards v. State,* 57 S.W.3d 677, 680 (Tex. App.-Beaumont 2001, pet. ref'd); *see Trevino v. State,* 752 S.W.2d 735, 736–37 (Tex. App.-Eastland), *pet. dism'd,* 759 S.W.2d 142 (Tex.Crim.App.1988).

The State, therefore, was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly placed D.F. in reasonable apprehension of imminent bodily injury when she accosted him with the baseball bat. Imminent means "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." BLACK'S LAW DICTIONARY 750 (6th ed.1990); *see Devine v. State,* 786 S.W.2d 268, 270 (Tex.Crim.App.1989); *In re A.C.,* 48 S.W.3d 899, 904 (Tex.App.-Fort Worth 2001, pet. denied); *Hill v. State,* 844 S.W.2d 937, 938 (Tex.App.-Eastland 1992, no pet.); *see also Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991) ("Intent may be inferred from acts, words and conduct of [the] accused."), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992).

We have already detailed the pertinent facts above; however, we reiterate that Appellant testified that she never intended to hit D.F. with the baseball bat but had it for self-protection. Further, D.F. testified that Appellant never got closer than fifteen feet from him, and she was never close enough to hit him with the bat. D.F. testified that it would have been "impossible" for her to have hit him with the bat

**2.** This court has observed before, and we again note in this opinion, that there is dicta in some cases requiring that a victim perceive the threat. *See Edwards,* 57 S.W.3d at 679–80 (citing *McGowan v. State,* 664 S.W.2d 355, 357 (Tex.Crim.App.1984) ("[S]tabbing [the victim from behind] ... clearly placed the victim in danger, but it did not constitute a

threat because the victim was unaware of her peril.")). This dicta is undoubtedly present because a victim's perception of a threat is the best and most common type of circumstantial evidence that the defendant acted with the requisite intent to threaten bodily injury.

from where she stood, and no obstacles prevented her from reaching him if she had so desired. Importantly, D.F. testified that while he felt threatened by what Appellant said and by the way she held the bat, he never felt threatened with imminent bodily injury because of where she was standing.

■ The dissent reasons that the jury could have chosen to disbelieve D.F.'s testimony that he did not fear imminent bodily injury because of Appellant's distance from him and that there was nothing to prevent her from coming closer if she had wanted to do so. However, the jury's right to disbelieve a witness does not constitute evidence to the contrary. *See Johnson v. State*, 673 S.W.2d 190, 193 (Tex.Crim.App.1984); *Tippitt v. State*, 41 S.W.3d 316, 326 (Tex.App.-Fort Worth 2001, no pet.). After reviewing all of the evidence extensively under the appropriate standard of review, we conclude that the jury could not have rationally determined beyond a reasonable doubt that Appellant intended to threaten D.F. with imminent bodily injury. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. We hold the evidence is legally insufficient on the assault by threat element. Because the evidence is legally insufficient to support the trial court's adjudication that Appellant engaged in delinquent conduct, we sustain her second issue.

With respect to Appellant's first issue—that the trial court erred by including terroristic threat in the charge as a lesser included offense of aggravated assault—we have already concluded that the jury could not have rationally determined beyond a reasonable doubt that Appellant intended to threaten D.F. with imminent bodily injury. Likewise, even if the trial court improperly charged the jury on terroristic threat, the jury could not have found that Appellant committed a terroristic threat

because the offense of terroristic threat requires the State to prove a person "threaten[ed] to commit any offense involving violence to any person or property with intent to place any person in fear of *imminent* serious bodily injury." Tex. Penal Code Ann. § 22.07(a)(2) (emphasis added). We therefore do not reach Appellant's first issue. *See* Tex.R.App. P. 47.1.

## IV. CONCLUSION

This case involved foolish schoolyard antics that escalated to conduct worthy of no more than a Class C misdemeanor that could better have been handled by a Teen Court referral. Because no lesser included offense of simple assault was charged, requested, or submitted, having sustained Appellant's second issue, we reverse the trial court's order of adjudication and disposition, render the judgment the trial court should have rendered, *see* Tex.R.App. P. 43.3, and dismiss with prejudice the petition alleging delinquent conduct. Tex. Fam.Code Ann. § 54.03(g) (Vernon 2002); *In re Garza*, 984 S.W.2d 344, 346 (Tex. App.-Amarillo 1998, no pet.).

WALKER, J., filed a dissenting opinion.

WALKER, Justice, dissenting.

I respectfully dissent. The majority holds that legally insufficient evidence exists to show that the baseball bat, in the manner of its use or intended use by S.B., was capable of causing death or serious bodily injury and that legally insufficient evidence exists to show that S.B. intended to cause or knowingly caused in D.F. a reasonable apprehension of imminent bodily injury. I would hold that the evidence is legally sufficient on both of these elements to support the jury's finding that S.B. engaged in delinquent conduct by committing aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 1.07(a)(17)(A), (B) (setting forth defini-

tion of deadly weapon), 22.01(a)(2) (setting forth elements of assault), 22.02(a)(2) (setting forth elements of aggravated assault) (Vernon 2003).

The evidence, viewed properly in the light most favorable to the jury's finding, establishes that an angry S.B., wielding an aluminum baseball bat—sometimes in an upright, swinging position "like a baseball player kind of"—walked up to within two feet of D.F. and told him, "I'll fucking hit you." D.F. backed away from S.B. as she approached him.

An object is a deadly weapon if it is exhibited to the victim in a manner showing that the aggressor intends to use it, and it is capable of use, to inflict serious bodily injury or death if the aggressor is not satisfied. *Hammons v. State*, 856 S.W.2d 797, 801 (Tex.App.-Fort Worth 1993, pet. ref'd) (holding evidence sufficient to show baseball bat used as a deadly weapon in prosecution for aggravated robbery); *Warren v. State*, 764 S.W.2d 906, 908 (Tex.App.-Corpus Christi 1989, pet. ref'd) (holding evidence sufficient to show baseball bat used as deadly weapon in prosecution for aggravated assault); *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000) (holding evidence that defendant had knife sticking out of his back pants pocket during robbery and violent attack legally sufficient to support finding that defendant's intended use of the knife rendered the knife capable of causing serious bodily injury or death and that defendant used it during commission of the underlying crime); *see also In re R.M.*, No. 08–02–00105–CV, 2002 WL 31840968, at *1 (Tex.App.-El Paso 2002, no pet.) (not designated for publication) (holding evidence sufficient to show golf club was used as deadly weapon and to support jury's finding that R.M. engaged in delinquent conduct by committing aggravated assault with a deadly weapon). I would

hold that a rational trier of fact could have found that S.B.'s exhibition of the bat, up on her shoulder, like a baseball player ready to swing, constituted the display of the bat in a manner showing that her intended use of the bat rendered it capable of causing serious bodily injury or death. Accordingly, I would hold that the evidence is legally sufficient to prove that the bat, as used and exhibited by S.B., was a deadly weapon.

In determining whether legally sufficient evidence exists that S.B. intentionally or knowingly threatened D.F. with imminent bodily injury, we look to the acts and culpability of S.B., that is, whether she intended to cause or knowingly caused in the victim a reasonable apprehension of imminent bodily injury. *See Edwards v. State*, 57 S.W.3d 677, 680 (Tex.App.-Beaumont 2001, pet. ref'd). Although D.F. admitted he felt threatened by S.B. and by the way she was holding the bat, he denied he feared imminent bodily injury. The jury, however, as the finder of fact, could have determined that regardless of whether D.F. feared imminent bodily injury, S.B.'s actions, words, and retaliatory motive for the entire encounter were calculated to cause D.F. reasonable apprehension of imminent bodily injury. Moreover, the jury could have disbelieved D.F.'s testimony that he didn't fear imminent bodily injury when S.B. approached him with the bat on her shoulder threatening to hit him. The jury could have reasonably concluded that D.F. did fear imminent bodily injury. *See, e.g., Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986) (recognizing that the jury is entitled to judge the credibility of the witnesses and may choose to believe all, some, or none of the witness's testimony); *see also Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995) (holding that it is the jury's job to reconcile conflicts in the evidence). Viewing the evidence in the light most favorable to the

jury's finding, I would hold that legally sufficient evidence exists that S.B. threatened D.F. with imminent bodily injury.

I would hold that, giving full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, legally sufficient evidence supports the jury's finding that S.B. engaged in delinquent conduct by committing aggravated assault with a deadly weapon and would affirm the trial court's order of adjudication and disposition. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).