TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00284-CV






In the Matter of B. P. S.





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-27,754, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The district court, sitting as a juvenile court, adjudicated B.P.S. delinquent after
finding that he committed the offense of aggravated robbery. See Tex. Penal Code Ann. § 29.03
(West 2003). The juvenile court assessed punishment at three years' probation. In a single issue on
appeal, B.P.S. challenges the factual sufficiency of the evidence supporting the juvenile court's
finding that a deadly weapon was used during the commission of the offense. Within that issue,
B.P.S. also challenges the admissibility of certain evidence. We will affirm the judgment.


BACKGROUND The juvenile court heard evidence that, on the evening of November 17, 2006, the
victim, Gorge Alcides Ramos Rivera, was approached on the street by a group of four boys, one of
whom Rivera identified in court as B.P.S. Rivera testified that B.P.S. asked him if he had a cigarette.
Rivera told him that he did not. According to Rivera, B.P.S. then asked him for a dollar. Rivera
gave B.P.S. a dollar, but B.P.S. told him, "No, it's five." Rivera recounted that, at this point, one
of the other boys hit him in the head. (1) When the State asked Rivera what he got hit with, Rivera
answered, "The truth is I don't know. It was so--so fast that I didn't see." The State then asked
if what he was hit with was hard or soft. Rivera testified, "Very hard." The State also asked,
"When you got hit, did it hurt?" Rivera responded, "Of course." Rivera identified for the court a
scar over his left eye where he was allegedly hit. Rivera explained that, after he was hit, he fell to
the ground "from the impact." He then recalled the boys "starting [] to press on [his] pockets." 
Rivera testified that "they took everything. They took my telephone, my wallet, and everything." 
After the boys left, Rivera got up and made his way back to his apartment. He testified that he
"had a lot of blood," and he placed a jacket around his head to cover the wound. When he returned
to his apartment, Rivera and his friends decided to go back out and try to locate the boys. Rivera and
his friends found them at a bus stop. Rivera testified that, when they arrived, police officers were
already talking to the boys. Rivera approached one of the officers and, through a friend who
translated for him, (2) told the officer what happened. The officers searched B.P.S. and found Rivera's
cell phone in B.P.S.'s pocket. Rivera testified that the police then called an ambulance, and Rivera
was transported to the emergency room. At the hospital, doctors examined Rivera's wounds. 
Rivera testified that they put a patch on his eye and also "did some stitches" because his wound
"was very big."

 In addition to Rivera's testimony about the nature and severity of his injuries, also
admitted into evidence were police photographs taken of Rivera's face on the night of the incident,
and medical records from the hospital where Rivera was treated. The photographs show what
appears to be blood around Rivera's left eye and on his forehead, while the medical records provide
details about Rivera's injuries. Specifically, in a record titled, "Emergency Room Report," the
treating physician reported the following:

 

 Patient is a 19-year-old Latin-American male who was in a fight this afternoon and
was struck with a rock on his face. There was no loss of consciousness. He has no
neck or back pain. He says he does have some mild pain in his thighs and a little
ache in his left flank. . . .

 

 . . . .

 

 He has a 1 cm jagged laceration just above his left eyebrow. There are two small
rock foreign bodies in the wound which were easily removed. There was no visible
or palpable skull fracture, no evidence of entrapment. He has a small abrasion on his
left malar region of his face. Otherwise his face is nontender and traumatic. . . .

 

 . . . .

 

 After obtaining adequate anesthesia the area was prepped and draped in a sterile
manner. . . . The two rocks were removed. The wound was reexplored. No
other injury or foreign body was noted. It was then closed with . . . sutures and
Neosporin applied.

 

 DIAGNOSES

 1. Facial laceration, sutured.

 2. Closed-head trauma.

 

 PLAN

 I have given him head injury as well as wound precautions, and requested he return
if he has more pain, fever, vomiting, vision changes, weakness, numbness, rash, or
feels worse. I have requested he return in 48 hours for a wound check. I placed him
on Keflex and Vicodin. He did receive Duricef here.


 The juvenile court also heard evidence from City of Austin police officer
Carlos Vallejo, who responded to the crime. Vallejo testified that he had been a police officer for
approximately five-and-a-half years. Of relevance to this appeal, the State asked Vallejo the
following question: "Is an object with the density or hardness of a rock, or something solid like that,
a rock, a piece of wood, a hard piece of plastic, is that able to inflict serious bodily injury; do you
know?" Counsel for B.P.S. objected to this question on numerous grounds, including that it called
for speculation, was not relevant, was more prejudicial than probative, and that the officer had not
been designated or qualified as an expert. The juvenile court overruled the objections. The State
then rephrased the question: "Do you believe that taking an object like that, with that density, and
hitting somebody, is capable of causing serious bodily injury, if not death?" Counsel for B.P.S.
objected to the State's rephrasing and re-urged his earlier objections. The juvenile court responded:


 The objection is overruled. However, the Court will accept this as just the
general knowledge of whether or not a rock, or something like that, striking
someone's head, by the basic common knowledge of all of us could cause
death or serious bodily injury. Please answer the question.


Vallejo answered, "Yes."

 The juvenile court also heard testimony from B.P.S., who denied the
allegations against him. B.P.S. testified that he saw his friend "punch" Rivera. B.P.S. was then
asked, "What does he punch him with?" B.P.S. answered, "His fist, for all I seen."

 The juvenile court found that B.P.S. committed the offense of aggravated robbery and
adjudicated him delinquent. Following the disposition hearing, the juvenile court placed B.P.S. on
probation, to begin at the Travis County Leadership Academy, for three years. This appeal followed.

ANALYSIS

Evidence admissibility

 Although B.P.S. designates only a single issue on appeal--whether the evidence is
factually sufficient to support the juvenile court's deadly weapon finding--he devotes most of his
briefing to the separate issue of whether certain evidence should have been admitted. Although not
specifically assigned as error, since we are to construe briefs liberally and address "every issue raised
and necessary to final disposition of the appeal," we will separately address B.P.S.'s admissibility
arguments. See Tex. R. App. P. 38.9, 47.1.

 We review a trial court's decision to admit evidence under an abuse of discretion
standard. Walters v. State, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its
discretion only when the decision lies "outside the zone of reasonable disagreement." Id.

 B.P.S. contends that the juvenile court should not have admitted (1) Officer Vallejo's
testimony about whether a rock or similar object was capable of causing serious bodily injury or
death and (2) the medical records. We will address each contention in turn.


 Officer Vallejo's testimony

 B.P.S. asserts that Officer Vallejo's testimony should not have been admitted for the
following reasons: (1) it violated rule 701, relating to opinion testimony by a lay witness,
see Tex. R. Evid. 701; (2) it violated rules 702 and 703, relating to expert testimony, see id.
702, 703; (3) it violated rules 401 and 403, in that it was either not relevant or more prejudicial than
probative, see id. 401, 403; and (4) Vallejo's name was not included on the State's witness list.

 We find these contentions to be without merit. First, rules 702 and 703 are not
implicated in this case, as the juvenile court did not allow Officer Vallejo to testify as an expert:
"[T]he Court will accept this as just the general knowledge of whether or not a rock, or something
like that, striking someone's head, by the basic common knowledge of all of us could cause death
or serious bodily injury."

 Second, there was no abuse of discretion in the juvenile court's finding that Vallejo's
testimony was admissible under rules 401 and 403. Rule 401 defines "relevant evidence" as
"evidence having any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence." 
Tex. R. Evid. 401. The juvenile court did not abuse its discretion in finding that Vallejo's testimony
about whether a rock or similar object was capable of causing serious bodily injury or death made
a deadly weapon finding more or less probable. As for rule 403, it provides that relevant evidence
may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Evid. 403. Because this was a one-day trial before
the juvenile court (and not a jury), the juvenile court did not abuse its discretion in finding that such
concerns were not present here.

 Third, there was no abuse of discretion in the juvenile court's finding that Vallejo's
testimony was proper opinion testimony by a lay witness under rule 701. Rule 701 provides that lay
witness testimony "is limited to those opinions or inferences which are (a) rationally based on the
perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the
determination of a fact in issue." Tex. R. Evid. 701. This Court has explained what is required
under section (a) of this rule:


 The rule's requirement that the opinion or inference of a lay witness be
"rationally based on the perception of the witness" can be said to have two
elements. The first element involves the personal knowledge of the witness
as required by Rule 602. The necessary personal knowledge may be gained
by the perception of fact by the senses of the witness. Thus, the perception
underlying a lay witness's testimony may be what was seen, heard, smelled,
tasted, touched, or felt. The second element mandates that the opinion must
be one that a reasonable person could draw from the underlying facts. Under
Rule 701, much must be left to the discretion of the trial court.


Harnett v. State, 38 S.W.3d 650, 657-58 (Tex. App.--Austin 2000, pet. ref'd)
(internal citations omitted).

 Although it is true that Officer Vallejo did not have any personal knowledge of
the specific object that was used in the commission of the crime, he testified that he had been a
police officer for approximately five-and-a-half years. Also, the record reflects that Vallejo saw
Rivera's wounds before they were treated and heard Rivera describe, through a translator, how
Rivera was attacked. From these underlying facts, Vallejo could draw the conclusion that, whatever
Rivera was hit with, the object was capable of causing serious bodily injury or death in the manner
of its use. Thus, the juvenile court's admission of Vallejo's lay-witness testimony was not
"outside the zone of reasonable disagreement." See Garcia v. State, 201 S.W.3d 695, 704-05
(Tex. Crim. App. 2006); see also Hollis v. State, 219 S.W.3d 446, 467 (Tex. App.--Austin 2007,
no pet.) ("Under Rule 701, an officer may testify about opinions based on his personal training and
first-hand experiences without being qualified as an expert under Rule 702.").

 Finally, as for B.P.S.'s contention that Vallejo's name was not included on the State's
witness list, during trial, counsel for B.P.S. withdrew this objection immediately after it was made
and before the juvenile court had an opportunity to consider it:


 [Counsel for B.P.S.]: Your Honor, I'm . . . going to object to this
witness. I don't know . . . who this witness is. 
The State has not provided me with a witness list;
despite the fact that I . . . filed my discovery order
and also my 404(b) letter quite a while ago. And
from the offense report that I saw, I don't . . . wait. 
This is the APD officer.

 

 [Prosecutor]: Yes, sir, it is.

 

 [Counsel for B.P.S.]: Okay. That's fine.


Therefore, any error relating to the State's alleged failure to include Vallejo on its witness list has
not been preserved for review.

 We conclude that there was no abuse of discretion in the juvenile court's admission
of Officer Vallejo's testimony. However, even were we to assume that the juvenile court should
not have admitted his testimony, any error would be harmless. See Tex. R. App. P. 44.2(b). As we
will explain below, there was other evidence in the record supporting the juvenile court's deadly
weapon finding apart from Vallejo's testimony. See Leday v. State, 983 S.W.2d 713, 717
(Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not
constitute reversible error if the same facts are shown by other evidence which is not challenged.").




 Medical records

 In his brief, B.P.S. asserts that the medical records detailing the nature of Rivera's
injuries should not have been admitted because: (1) the patient named in the records was a person
named "Jorge Alcedes," not Gorge Rivera; (2) B.P.S. had "no opportunity to confront and
cross-examine the doctor" who treated Rivera; and (3) one particular statement in the records is
"hearsay within hearsay." However, during trial, B.P.S. only objected to the admission of a
particular statement in the medical records on the basis of "hearsay within hearsay":


 The only objection that I have is going to be in this paragraph where it says,
"The patient is a 19-year-old Latin male, who was in a fight this afternoon
and was struck in the rock with a--in the face with a rock." I believe that's
hearsay within hearsay, and would ask that that portion be struck.


Therefore, B.P.S. has not preserved error on the issues of (1) the variance between the name of
the victim in the indictment and the name in the medical records, see Martin v. State, 541 S.W.2d
605, 608 (Tex. Crim. App. 1976) ("Questions involving the rule of idem sonans[ (3)] must be raised
in the first instance at trial. If the issue is raised for the first time on appeal, it will be treated
as having been waived and will present nothing for review."), and (2) B.P.S.'s inability to
confront and cross-examine the treating physician. See Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause
grounds."). Thus, we shall consider only the "hearsay within hearsay" issue.

 After counsel for B.P.S. objected on this ground, the juvenile court initially sustained
the objection, deleting the statement about the patient being "struck with a rock" but admitting the
remainder of the medical records. (4) However, the juvenile court later overruled B.P.S.'s objection
after the juvenile court determined that the documents were medical records that satisfied the
business records exception to the hearsay rule. See Tex. R. Evid. 803(4), 803(6).

 Rule 805 provides, "Hearsay included within hearsay is not excluded under the
hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule
provided in these rules." Tex. R. Evid. 805. Thus, in order for the "struck with a rock" statement
to be admissible, both the medical records and the specific statement within the medical records
needed to conform to an exception to the hearsay rule. On this record, we cannot conclude that the
juvenile court abused its discretion in admitting the statement.

 First, the medical records in this case satisfied the business records exception to
the hearsay rule. To be properly admitted under Rule 803(6), the proponent must prove that the
document was made at or near the time of the events recorded, from information transmitted by a
person with knowledge of the events, and made or kept in the course of a regularly conducted
business activity. Tex. R. Evid. 803(6). The predicate for admission of a business record may be
established by an affidavit that complies with Rule 902(10). Id. The predicate witness does not have
to be the record's creator or have personal knowledge of the contents of the record. Reyes v. State,
48 S.W.3d 917, 921 (Tex. App.--Fort Worth 2001, no pet.). The witness need only have personal
knowledge of the manner in which the records were prepared. Id. Rule 902(10)(b) provides a
sample form of an affidavit that complies with the rule and states that "an affidavit which
substantially complies with the provisions of this rule shall suffice." Tex. R. Evid. 902(10)(b). In
this case, the medical records included an affidavit by Shari Mitchell, the custodian of records for
South Austin Hospital, who averred that she had personal knowledge of the manner in which the
records were prepared. The affidavit follows the sample form provided in rule 902(10)(b) and thus
substantially complies with the rule. We find no abuse of discretion in the juvenile court's decision
to admit the medical records pursuant to the business records exception to the hearsay rule.

 Second, the statement within the medical records satisfied the medical diagnosis or
treatment exception to the hearsay rule. To be properly admitted under rule 803(4), the proponent
must prove that the statement was made for the purpose of medical diagnosis or treatment and
describing medical history, or past or present symptoms, pain, or sensations, or the inception or
general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis
or treatment. Tex. R. Evid. 803(4). The statement at issue, "Patient is a 19-year-old Latin-American
male who was in a fight this afternoon and was struck with a rock on his face," was in a section of
the "Emergency Room Report" titled, "History of Present Illness / Review of Symptoms." 
The document was signed by the treating physician. Thus, we find no abuse of discretion
in the juvenile court's finding that the statement was made for the purpose of medical diagnosis
or treatment.

 We conclude that the juvenile court did not abuse its discretion in admitting the
statement within the medical records. However, even assuming there was error, it would be
harmless. See Tex. R. App. P. 44.2(b). There were other statements in the medical records from
which the juvenile court could infer that Rivera had been struck with a rock. Specifically, in the
"Physical Examination" section, the physician wrote, "There are two small rock foreign bodies in
the wound which were easily removed." Then, in a section labeled "Procedure Note," the physician
wrote, "The two rocks were removed." B.P.S. did not object to either of these statements.

 We overrule B.P.S.'s arguments involving the admissibility of the evidence.


Factual sufficiency

 We now turn to B.P.S.'s contention that the evidence was factually insufficient to
support the juvenile court's deadly weapon finding. In his brief, B.P.S. concedes that there was
sufficient evidence supporting his adjudication for the offense of robbery. He asserts, however, that
he should not have been adjudicated for the offense of aggravated robbery "because the State's
evidence was factually insufficient to prove beyond a reasonable doubt the use of a deadly weapon,
namely some unknown blunt object."

 Adjudications of delinquency in juvenile cases are based on the criminal standard
of proof. See Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2007). Therefore, we review
adjudications of delinquency in juvenile cases by applying the same standards applicable
to sufficiency of the evidence challenges in criminal cases. In re M.C.L., 110 S.W.3d
591, 594 (Tex. App.--Austin 2003, no pet.).

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); see also Wooley v. State, ___ 
S.W.3d ___, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual
sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by
a hypothetically correct jury charge"). We then determine whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence. Watson, 204 S.W.3d at 415. 
"The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust." Grotti v. State, ____ S.W.3d ___, 2008 Tex. Crim. App. LEXIS
761, at *13 (Tex. Crim. App. 2008) (citing Watson, 204 S.W.3d at 414-17). In other words, we will
not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the verdict. See
Watson, 204 S.W.3d at 417.

 A person commits the offense of aggravated robbery if he commits a robbery and
he either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon
during the commission of the robbery. See Tex. Penal Code Ann. § 29.03. The penal code
defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that
causes death, serious permanent disfigurement, or protracted loss or impairment of the function
of any bodily member or organ." Id. § 1.07(a)(46) (West Supp. 2007). The penal code defines
"deadly weapon" as:

 (A) a firearm or anything manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury; or

 

 (B) anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.


Id. § 1.07(a)(17) (West Supp. 2007). In its petition alleging delinquent conduct, the State charged
that an "unknown blunt object" was used during the commission of the offense. The State concedes
that an "unknown blunt object" is not "manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury." Therefore, the State was required to prove, beyond a
reasonable doubt, that an "unknown blunt object" was capable of causing death or serious bodily
injury "in the manner of its use or intended use."

 Whether an object qualifies as a deadly weapon depends upon the evidence presented.
See Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Indeed, the court of criminal
appeals has noted that, depending upon the evidence shown, "almost anything can be a deadly
weapon." Lane v. State, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004). Several factors are used 
in making such a determination, including: (1) the physical proximity between the victim and the
object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the
weapon's ability to inflict death or serious bodily injury; and (5) the manner in which the defendant
used the weapon. In re S.B., 117 S.W.3d 443, 446 (Tex. App.--Fort Worth 2003, no pet.). Another
factor to consider is the nature of the injuries or wounds inflicted on the victim, if any. See Lane,
151 S.W.3d at 191. No one factor is determinative, and an appellate court must examine each
case on its own facts to determine whether the fact finder could have concluded from the
surrounding circumstances that the object used was a deadly weapon. Brown v. State, 716 S.W.2d
939, 947 (Tex. Crim. App. 1986); In re S.B., 117 S.W.3d at 447.

 B.P.S. asserts that the juvenile court's deadly weapon finding is based on nothing
more than "inferences stacked upon inferences." See Reedy v. State, 214 S.W.3d 567, 585
(Tex. App.--Austin 2006, pet. ref'd). We disagree with B.P.S.'s characterization of the evidence
in this case. The evidence in the record which supports the juvenile court's finding that an
"unknown blunt object" was used in the commission of the offense includes the following:

 


 Rivera's testimony about the nature of his injuries. He testified that he was hit
with something "very hard." It was so hard, in fact, that, when he was hit, he fell
to the ground "from the impact." He further testified that "there was a lot of
blood," and he drew the court's attention to a scar above his left eye where he had
allegedly been hit. The injury was severe enough that police officers called an
ambulance to transport Rivera to the emergency room for treatment. Rivera
further testified that doctors put a patch over his eye and "did some stitches"
because the wound was "very big."


 


 Police photographs showing Rivera's face after he was hit. The photographs
show what appears to be blood around Rivera's left eye and on his forehead.


 


 Medical records detailing the nature of Rivera's injuries. Statements in the
records include: "Patient is a 19-year-old Latin-American male who was in a
fight this afternoon and was struck with a rock on his face"; "He has a 1 cm
jagged laceration just above his left eyebrow"; "There are two small rock foreign
bodies in the wound"; "Facial laceration, sutured"; and "Closed-head trauma."



From the above evidence, the juvenile court could find, beyond a reasonable doubt, that the object
used in the commission of the offense was "capable of causing serious bodily injury or death"
"in the manner of its use or intended use."

 There is evidence in the record contrary to the juvenile court's finding. Rivera
testified that he did not know what he was hit with, and the object was never recovered. In fact,
B.P.S. testified that Rivera was hit, not with a rock, but with a fist. (5) Furthermore, according to
B.P.S., the rocks removed from Rivera's wound could have been gravel from Rivera's jacket when
he placed the jacket around his head to cover the wound. However, despite this contrary evidence,
we cannot say, with some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the juvenile court's deadly weapon finding. B.P.S. admitted at trial that he
saw one of the other boys who was with him hit Rivera. Whether Rivera was hit in the face with a
rock, a fist, or some other unknown blunt object, the nature and severity of Rivera's injuries--as
shown from Rivera's own testimony, the police photographs, and the medical records admitted
into evidence--provides sufficient evidence from which the juvenile court could find, beyond
a reasonable doubt, that the unknown blunt object was capable of causing serious bodily
injury or death.

 We overrule B.P.S.'s challenge to the factual sufficiency of the evidence.

 

CONCLUSION

 We affirm the judgment of the juvenile court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 6, 2008

1. It is undisputed that Rivera was hit by one of the other boys, not B.P.S. The State relied
on the law of parties to hold B.P.S. responsible for the other boy's actions. See Tex. Penal Code
Ann. § 7.02 (West 2003).
2. Rivera did not speak English. Both his statement to the police and his trial testimony were
translated from Spanish to English.
3. Idem sonans means "of the same sound." Martin v. State, 541 S.W.2d 605, 606
(Tex. Crim. App. 1976). The rule of idem sonans provides that if two names sound alike but are
spelled differently, any variance in spelling is immaterial, "provided the misspelling does not
transform the name into a wholly distinct appellation." Id. We note that the different names in this
case appears to be a question involving the rule of idem sonans. The victim testified during trial that
his full name was "Gorge Alcides Ramos Rivera." The name of the patient in the medical records
was "Jorge Alcedes."
4. Before admitting the medical records, the juvenile court asked counsel for B.P.S. if there
was any other objection. Counsel replied, "No, Your Honor."
5. We note, however, that even a fist can be a deadly weapon, depending on the manner in
which it is used. See Lane v. State, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004).