

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00437-CR
No. 02-19-00438-CR
No. 02-19-00439-CR
No. 02-19-00440-CR
No. 02-19-00441-CR
No. 02-19-00442-CR
No. 02-19-00443-CR
No. 02-19-00444-CR
No. 02-19-00445-CR

———————————————

SCOTT ZANDI, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court Nos. F17-2024-362, F17-2025-362, F17-2026-362, F17-2027-362, F17-2028-362, F17-2029-362, F17-2030-362, F17-2031-362, F17-2032-362

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

A jury found Scott Zandi guilty of six counts of aggravated assault on a public servant and three counts of deadly conduct. In a single issue on appeal, Zandi challenges the sufficiency of the evidence to support the aggravated assault convictions. He specifically challenges the sufficiency of the evidence to show that (1) he was aware that the six complainants were police officers, and (2) those officers perceived any threat from him. We affirm.

### Background

In July 2017, the manager of a Comfort Suites hotel in The Colony heard gunshots from room 109 and called 911. The occupant of that room was later identified as Zandi. Several police officers responded to the "shots fired" call, including complainants Kenneth Arrington III, Hector Garcia, Salim Plumb, Marc Hamm, Brian McDaniel, and Brian Baker. Hamm testified that "[t]he entire police department was basically there."

Arrington, the first officer to arrive, testified that he was wearing his police uniform and driving a marked police car, which he parked directly outside the shattered window of the room where the shots were being fired. Garcia similarly testified that he was in uniform and arrived in a marked police car with its lights and siren activated. He also testified that other officers on the scene, including McDaniel, Hamm, Baker, and Plumb, were in uniform. The evidence does not show, however, that Zandi actually saw the officers or their police cars. Although the hotel manager

testified that room 109's window curtains were open when he went outside to investigate the gunfire, Arrington testified that they were closed when he arrived.

Arrington spoke to Zandi through the door of room 109 and identified himself as a police officer. Zandi told Arrington that there were children and dogs in the room with him and expressed concern that there were snipers outside. Zandi asked that an officer go outside to talk to him through the window. Arrington did not send an officer outside because it was unsafe. It was later determined that Zandi was in the room alone.

Arrington tried to open the room's door with a key supplied by the hotel manager, but the door was double-locked. Arrington and Garcia then took up positions diagonally across the hall from room 109. They were afforded some protection by a corner wall and were able to maintain a direct line of sight to room 109's door. While Arrington and Garcia were stationed to the right of the door, McDaniel, Plumb, Hamm, and Baker took up positions across the hall and to the left of the door. Many other officers were also on the scene but were not in the hallway.

The officers in the hallway continued to hear sporadic gunfire from room 109 and ultimately decided to try to breach the door. McDaniel fired a shotgun into the door several times but was unable to open it. The blasts did, however, create a softball-sized hole in the door. Arrington, Garcia, Hamm, and McDaniel all testified that they saw the barrel of a handgun protrude through that hole from inside the room and move back and forth and up and down.

3

Arrington testified that, at one point, the gun was pointed in his direction and that he felt threatened. Garcia testified that he saw the gun point in the direction of himself, Arrington, Hamm, Baker, Plumb, and McDaniel, and that he felt threatened. Hamm also saw the gun point toward him and the officers in close proximity to him, as well as toward Arrington and Garcia. McDaniel saw the gun point in his direction and in the direction of Plumb, Baker, Hamm, Arrington, and Garcia. Plumb did not see the gun but heard Arrington and Garcia say that they saw it point at them. Baker also did not see the gun but heard an officer on his police radio say that he saw a gun being pointed out the hole in the door. Both Plumb and Baker testified that they felt threatened despite not seeing the gun themselves.

Shortly after displaying the gun through the hole in the door, Zandi jumped out the broken window and was taken into custody by waiting officers. He was eventually indicted for, and convicted of, aggravated assault on Arrington, Garcia, Plumb, Hamm, McDaniel, and Baker, and three counts of deadly conduct. While he filed notices of appeal from all nine convictions, the sole issue he raises in his brief—sufficiency of the evidence—relates only to the convictions for aggravated assault.

## Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex.

4

Crim. App. 2017). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

## Aggravated Assault

A person commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2). A person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). The offense is a first-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id.* § 22.02(b)(2)(B).

> Each of the aggravated assault indictments charges that Zandi
>
> did then and there intentionally or knowingly threaten [named officer] with imminent bodily injury by . . . pointing a firearm at, towards, or in the direction of [named officer], and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the defendant did then and there know that the said [named officer] was then and there a public servant, to-wit: a certified peace officer, and that the said [named officer] was then and there lawfully discharging an official duty, to-wit: responding to or investigating a call for service[.]

Zandi contends that the evidence is insufficient to support findings that he knew that the six named complainants were police officers and that those officers perceived any threat from him.

5

## Identity as Police Officers

Zandi first contends that the evidence is insufficient to prove that he knew that the six complainants were police officers. He argues that there is no evidence that he saw any of the officers or any of the police cars and that no witness was able to definitively testify that Zandi knew that the persons he pointed his gun at in the hallway were police officers. There is, however, evidence from which the jury could have inferred that Zandi knew that those persons were police officers.

At least two witnesses testified that officers arrived on the scene with their cars' lights and/or sirens activated. Arrington spoke to Zandi through the room's door and identified himself as a police officer. Zandi responded appropriately to Arrington, indicating that he was able to hear and understand what Arrington said. Zandi also asked for an officer to go outside to speak with him through the window and said he was worried that there were snipers outside. These statements demonstrate that Zandi knew that Arrington was not the only police officer present.

The record also supports the inference that Zandi knew that multiple officers were in the hallway outside his room. He was certainly aware of the efforts to blast the door open with a shotgun. Given the circumstances, it is not unreasonable to infer that Zandi knew that it was the police who were trying to gain entry to the room. *See* Tex. Penal Code Ann. § 6.03(b) ("A person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist."). Similarly, it is not unreasonable to infer that, after Zandi

6

had fired his weapon numerous times and the police had tried to shoot his door open, the only persons remaining in the hallway were police officers. *See id.*

We conclude that the evidence is sufficient to support a finding that Zandi knew, when he pointed his gun toward the persons in the hallway, that those persons were police officers.

**Perception of Threat**

Zandi also urges that the evidence is insufficient to prove that the officers perceived a threat from him. He relies on *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984) (en banc), for the proposition that the State was required to prove such perception. The appellant in that case stabbed the complainant in the back of the head as she was kneeling down to assist her daughter. *Id.* at 357. The court of criminal appeals noted that there was no evidence that the appellant threatened the complainant in any way before stabbing her and that the complainant "never saw appellant holding a knife nor did she testify that appellant threatened her with a knife." *Id.* The court concluded that the evidence was insufficient to support a conviction for aggravated assault by threat. *Id.* at 358.

The court of criminal appeals addressed *McGowan* in a later case and explained that it "did not define assault by threat as requiring a victim's perception of the threat." *Olivas v. State*, 203 S.W.3d 341, 348 (Tex. Crim. App. 2006). It more accurately described its holding in *McGowan* as requiring that there "be *some* evidence of a threat being made to sustain a conviction of assault by threat." *Id.* at 349

7

(emphasis in original). That is what was lacking in *McGowan*—"the defendant just stabbed [the complainant], he did not threaten her first." *Id.*

The court in *Olivas* left open the question of "whether . . . assault by threat requires an intended victim to perceive the threat." *Id.* It has since, however, recognized that assault by threat is a conduct-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008); *see also In re S.B.*, 117 S.W.3d 443, 450 (Tex. App.—Fort Worth 2003, no pet.). The offense focuses on the act of making a threat not the perception of the threat or any result that it might cause. *Landrian*, 268 S.W.3d at 536; *In re S.B.*, 117 S.W.3d at 450. That does not render perception of a threat irrelevant, though. As we have previously recognized, "a victim's perception of a threat is the best and most common type of circumstantial evidence that the defendant acted with the requisite intent to threaten bodily injury." *In re S.B.*, 117 S.W.3d at 450 n.2.

The ultimate inquiry in this case is thus whether the evidence is sufficient to prove that Zandi threatened the officers, not whether they perceived a threat from him. A threat does not require words but may be communicated by conduct. *Blount v. State*, 542 S.W.2d 164, 166 (Tex. Crim. App. 1976); *Black v. State*, No. 2-05-388-CR, 2006 WL 2507325, at *3 (Tex. App.—Fort Worth Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication). For example, "[t]he act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for

aggravated assault." *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd).

The State presented evidence that Zandi repeatedly fired a gun while locked in his hotel room. This conduct resulted in several police officers responding to the scene, six of whom took up positions in the hallway outside the room. Zandi was undoubtedly aware that someone was in the hallway when McDaniel tried to shoot the door open. The jury could also infer that Zandi was aware that there were multiple people in the hallway by the way he moved the gun around as he stuck it through the hole in the door. Hamm described the movement of the gun as "trying to aim at us" and "trying to find a target."

Finally, several officers testified that they saw the barrel of the gun point in the direction of Arrington, Garcia, Hamm, Baker, Plumb, and McDaniel. This occurred after Zandi had already fired the weapon numerous times. All six officers testified that they felt threatened by Zandi pointing the gun through the door in their directions.

Zandi's conduct of pointing a loaded weapon in the direction of the officers is, in itself, sufficient to uphold his convictions for aggravated assault by threat. *See id.* In addition, while perception of the threat is not required, the officers' perception in this case provides additional evidence supporting those convictions. *See In re S.B.*, 117 S.W.3d at 450 n.2.

Zandi's sole issue on appeal is overruled.

## Conclusion

The judgments of conviction are affirmed.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 18, 2021