Clifton Eugene RUCKMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–99–00388–CR.

Court of Appeals of Texas,
Tyler.

Nov. 29, 2000.

Discretionary Review Refused
April 11, 2001.

James W. Volberding, Baynham & Volberding, Tyler, for appellant.

Panel consisted of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

WORTHEN, Justice.

Clifton Eugene Ruckman ("Appellant") appeals his conviction for the offense of aggravated sexual assault of a child. TEX. PEN.CODE ANN. § 22.021 (Vernon 1997). Appellant pleaded "not guilty" and was tried before a jury on the issues of guilt and punishment. He was thereafter convicted of aggravated sexual assault of a child, and punishment was assessed at life imprisonment. Appellant presents twelve issues on appeal. We affirm.

## FACTS

In March 1999, the ten-year-old complainant told her mother about sexual acts which Appellant had performed on her. The mother took her daughter to authorities, who began an investigation of complainant's allegations that Appellant had sexually assaulted her. The evidence at trial showed the hymen to the complainant's vagina had been penetrated twice and that bacteria found in the complainant's vagina could only have come from sexual contact with a male. In a signed written statement, Appellant confessed to a Wood County deputy sheriff that he had sexually assaulted the complainant. Further, after a week in custody, he initiated a meeting with a mental health counselor to whom he also confessed. During his trial, however, the Appellant denied that he had sexually assaulted the complainant.

## CONSTITUTIONAL ISSUES

In his first issue, Appellant contends that he was deprived of his rights under

the Sixth and Fourteenth Amendments to the United States Constitution to an impartial jury when five of the twelve jurors contributed their daily jury fee to either a victim's compensation fund or the Wood County Child Welfare Fund.[1] In his second issue, he contends he was denied his Sixth and Fourteenth Amendment rights when he was forced to use seven of his ten strikes to eliminate jurors who contributed to either the victim's compensation fund or the child welfare fund. Because these two issues deal with an alleged implied bias of these jurors, we consider them together.[2]

■■■ The constitutional standard of jury impartiality is a question of law. *Patton v. Yount,* 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891 n. 12, 81 L.Ed.2d 847, 857 n. 12 (1984); *Burton v. Johnson,* 948 F.2d 1150, 1157 (10th Cir.1991). We review a question of law *de novo. Maestas v. State,* 987 S.W.2d 59, 62 (Tex.Crim.App.1999).

■■■ "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed ..." U.S. CONST. amend. VI. An impartial trier of fact is a jury capable and willing to decide the case solely on the evidence before it. *See Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). The Fourteenth Amendment states that no person shall be deprived of life, liberty or property without due process of law. U.S. CONST. amend. XIV, § 1. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Smith,* 455 U.S. at 217, 102 S.Ct. 940, 946.

Appellant complains that when twenty-seven of the ninety-eight prospective jurors in his case indicated that they wished to donate their jury fee to the victims compensation fund or the child welfare fund that he was entitled to twenty-two additional peremptory challenges under the Sixth and Fourteenth Amendments. Appellant argues that each of these twenty-seven prospective jurors had entered into a financial partnership with the gov-

---

1. Appellant specifically complains of section 61.003(a) of the Texas Government Code which specifically states:

   **§ 61.003. Donation of Reimbursement**
   (a) Each prospective juror reporting for jury service shall be provided a form letter that when signed by the prospective juror directs the county treasurer to donate all of the prospective juror's reimbursement for jury service to:
   (1) the compensation to victims of crime fund under Subchapter B, Chapter 56, Code of Criminal Procedure;
   (2) the child welfare service fund under Chapter 264, Family Code;
   (3) any program selected by the commissioners court that is operated by a public or private nonprofit organization and that provides shelter and services to victims of family violence; or
   (4) any other program approved by the commissioners court of the county.

   TEX. GOV'T CODE ANN. § 61.003(a) (Vernon 1999).

2. Appellant also contends he was deprived of his right to an impartial jury under the Texas Constitution. Like its federal counterpart, the Bill of Rights in the Texas Constitution recognizes the right to trial by jury. *Jones v. State,* 982 S.W.2d 386, 391 (Tex.Crim.App.1998). "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." TEX. CONST. art. I, § 10. There is no significant textual difference between federal and state constitutions which would indicate that different standards of protection should be applied, and we can conceive of no reason why the impartial-jury requirements in the two constitutions should be different. *Jones,* 982 S.W.2d at 391. Appellant has not shown how they are distinguished. As a result, we will not distinguish between the federal and state provisions under Appellant's first two issues.

ernment by donating their daily jury fee to these funds. He contends that this is an implied bias.[3]

■ Whether a juror's partiality may be presumed from the circumstances is a question of law. *Hunley v. Godinez,* 975 F.2d 316, 318 (7th Cir.1992). A majority of the United States Supreme Court has never explicitly adopted or rejected the implied bias doctrine. *Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir.1990). However, Justice O'Connor writing in a concurring opinion, did say that the doctrine of implied bias should be retained to preserve Sixth Amendment rights. *Smith,* 455 U.S. at 223, 102 S.Ct. 940, 949 (O'Connor, J., concurring). Justice O'Connor said there were some extreme situations that would justify a finding of implied bias. *Id.* 455 U.S. at 222, 102 S.Ct. 940, 948. The examples included a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one the participants in the trial, or that the juror was a witness or somehow involved in the criminal transaction. *Id.* The doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances. *Person v. Miller,* 854 F.2d 656, 664 (4th Cir.1988).

■ In the instant case, Appellant contends that individuals who care enough about victims of crime or children to donate their ten-dollar-a-day juror fee are biased as a matter of law. A defendant's entitlement to impartial jurors on the question of whether he committed the crime charged is entirely distinct from the question of whether the crime itself is one which arouses their moral passion. *United States v. Johnson,* 990 F.2d 1129, 1133 (9th Cir.1993). A defendant is not entitled to demand a jury impartial to the underlying crime itself. *Id.* We hold that the trial court did not err in refusing to dismiss the prospective jurors who had donated their ten-dollar-a-day juror fee to the crime victim's compensation fund or the child welfare fund. Because there was no implied bias, there was no error in refusing to grant Appellant's additional peremptory challenges in this matter. Appellant's issues one and two are overruled.

■ In his third issue, Appellant contends that section 61.003 of the Texas Government Code is unconstitutional as applied in the case. He complains that the prospective jurors, prior to the calling of the Appellant's case, were given the following instructions by the trial judge:

You were handed out one of these sheets referring to your fees. Is there anybody who didn't get one of these sheets. All right. We've got a couple of people in the back that need them.

This is something new that the legislature has required that we make available to you, give you an opportunity to give up your large fees that you are going to be paid for your service. The county has set ten dollars a day for jury service. That is more than the minimum required but it's obviously not magnificent pay.

But nevertheless, the legislature wants to give you an opportunity to give up that fee and gives you ways to do that. You do not have to do that. And if you don't wish to give up the fee, then do not fill out the sheet that you have been handed.

---

**3.** Appellant did not attempt to show actual bias by any of these jurors or any prospective jurors during his voir dire of the jury. On his appeal, he is only invoking the doctrine of implied bias in attacking their impartiality.

But if you do wish either to not claim, in other words, waived your fee for jury service, in which case the funds remain the county treasury, then you need to check the first option down at the bottom of the page.

If you don't wish to claim your fee but you want to either donate that fee to the state crime victims compensation fund, then you check number 2.

Or if you wish to donate all of your fee to the Wood County Child Welfare Services fund, check number 3.

Again, if you don't wish to give up your fee at all and the Court is certainly not trying to encourage you to do so, then you simply do not fill out the form.

But when we take the break, if you would hand in any of those, any of you who wish to exercise one of those three options, you will need to place your form in the box that the clerk is setting there on the rail.

█ Appellant now argues that as a result of the trial judge telling the jurors that Texas law gave them the choice of donating their jury fee of ten dollars a day to funds for crime victims or child welfare, he was denied his constitutional rights to an impartial jury and due process of law. However, Appellant never objected to the above statement made to the jury by the trial judge, either before or after it was made. An objection that a statute has been applied unconstitutionally must be made at trial for such constitutional error to be preserved for our review. *See Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim. App.1995). Because no objection challenging the constitutionality or the way the trial judge presented the statute to the jury was made by the Appellant, it is waived. *See id.* Appellant's issue three is overruled.

## EXPERT TESTIMONY

In his fourth and fifth issues, Appellant contends that the trial court violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution by not allowing the jury to hear expert testimony regarding false confessions. The State responds that Appellant's expert witness had only done cursory research on the subject and that he had failed to develop a link between his conclusions and the research in the field of false confessions.

█ The "threshold determination" by a trial court regarding the admission of expert testimony in a criminal trial is whether that testimony will help the trier of fact understand the evidence or determine a fact in issue. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App.1992). Texas Rule of Evidence 702 states:

**RULE 702. TESTIMONY BY EXPERTS**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702.

█ It is the burden of the proponent of new or novel scientific evidence such as the possibility of a false confession, to show by clear and convincing evidence that the proffered evidence is scientifically reliable. *See Kelly*, 824 S.W.2d at 573. We must then determine whether Appellant met his burden of establishing the scientific reliability of the testimony. *Id.* We will not disturb the trial court's decision to exclude expert testimony absent an abuse of discretion. *See id.* at 574. If the trial court's decision to exclude the evi-

dence falls within the "zone of reasonable disagreement," it is not an abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (opinion on reh'g).

In *Kelly,* the Court of Criminal Appeals held that Rule 702 required satisfaction of the following three-part reliability test before new or novel scientific evidence would be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly,* 824 S.W.2d at 573. In *Nenno v. State,* 970 S.W.2d 549 (Tex.Crim.App.1998) (overruled on other grounds), and *State v. Terrazas,* 4 S.W.3d 720 (Tex.Crim.App.1999), the Court of Criminal Appeals considered whether *Kelly* was applicable to "the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method." *Nenno,* 970 S.W.2d at 561. The Court of Criminal Appeals answered that question with a qualified "yes." *Id.* The appropriate questions to ask a social science expert are (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony was within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Id.* at 561. We will apply the *Nenno* test to the testimony of Dr. Barry Rath, the neuropsychologist whose testimony on false confessions was excluded by the court.

Before Dr. Rath testified during the trial, the court held a hearing outside the presence of the jury on the admissibility of the evidence of false confessions as it related to Appellant's confession. The trial court was provided articles on studies in the field of false confessions by Appellant.

The trial court, after studying the materials provided by the Appellant, questioned the applicability to the matter on trial. The record indicated that Appellant was unable to provide the court with any published cases regarding admissibility of testimony of false confessions.

Dr. Rath testified that he had researched the subject of false confessions at the request of Appellant's counsel. He gave the full name of one researcher and the last name of two researchers whose material he had studied. These were not the same researchers whose materials had been provided to the court during the hearing. He then testified he believed Appellant could have made a false confession. He based that possibility upon Appellant's limited intellectual and academic ability. Although Dr. Rath stated that he could not say for sure that Appellant had made a false confession, he believed that the confession was questionable and that his opinion would be supported by literature in the field of psychology. However, Dr. Rath failed to specifically name studies or articles upon which he based his opinion. From the record, it appears that none of the materials which the trial court had previously studied regarding false confessions were relied upon by Dr. Rath in his testimony. Further, Dr. Rath failed to tie his testimony specifically to any study or article. As a result, we cannot say that the principles of false confessions were articulated in a way that the trial court could make a determination that the minimal principles were met as required by the third part of the *Nenno* test. *Nenno,* 970 S.W.2d at 561. We hold that Appellant has failed to carry his burden of showing the scientific reliability of Dr. Rath's proposed testimony, and consequently, it was not an abuse of discretion to exclude such testimony. Appellant has further failed to provide any authority to show how the

exclusion of evidence on false confessions violated the due process clause of the Fourteenth Amendment. No objection to the exclusion of this evidence was made on constitutional grounds and therefore is not preserved for our review. TEX.R.APP. P. 33. 1(a). Appellant's issues four and five are overruled.

### REBUTTAL TESTIMONY

In issues six through eleven, Appellant complains about the testimony of Johnny Nutt, a licensed therapist and administrator at the Andrews Center Behavioral Health Facility in Mineola. Appellant contends that Nutt's testimony that he confessed to sexually assaulting his daughter, violated the physician-patient privilege along with constitutional guarantees. He argues that his federal constitutional right to remain silent under the Fifth and Fourteenth Amendments, his right to counsel under the Sixth and Fourteenth Amendments and his rights to due process under the Fourteenth Amendment were violated by Nutt's testimony. Appellant further contends the State had the burden of proof to show the confession was voluntary but failed to meet that burden. We will consider these issues together.

At trial, Appellant testified that he had not sexually assaulted the complainant. In response, the State called Nutt as a rebuttal witness to testify that Appellant had admitted the crime. The trial court held a hearing outside of the presence of the jury to determine whether Nutt's testimony would be allowed. As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). A reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Mont-*

*gomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990).

Nutt testified that his meetings with Appellant had been triggered when the Appellant made an application with the Wood County jail to meet with a counselor. Upon Nutt's receipt of this inmate request form from the Wood County jail, an appointment was made for them to meet on March 25, 1999. Nutt testified that at this meeting, which lasted about fifteen minutes, Appellant told him "I'm here to find out why I did this."

Although the inmate request form was not introduced into evidence, the testimony of Nutt was clear that Appellant had initiated the meeting with him. There was no rebuttal evidence from Appellant on this issue. The burden of proof at the hearing on admissibility is on the prosecution, which must prove by a preponderance of the evidence that the defendant's statement was given voluntarily. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995). This burden was met. There was no evidence presented by the Appellant at the hearing on the admissibility of Nutt's testimony regarding any coercion of the Appellant. A statement is involuntary, for the purposes of federal due process, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unrestrained choice by its maker. *Id.* All of the evidence before the court showed that Appellant initiated the meeting with Nutt and voluntarily made his confession to him. The burden of proof then shifted to Appellant to show his meeting with Nutt was involuntary. No such proof appears in our record. It was not an abuse of discretion for the trial judge to allow Nutt to testify as to what Appellant told him.

Appellant contends that his federal constitutional rights under the Fifth,

Sixth and Fourteenth Amendments were violated when the court allowed Nutt to testify as to his confession. He bases this contention upon the United States Supreme Court case of *Estelle v. Smith,* 451 U.S. 454, 466, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981). *Smith* involved a court-ordered examination where the defendant had not been warned that he had a right to remain silent. That is distinguishable from the case before us where the uncontroverted evidence in the record shows it was Appellant who initiated the meeting with Nutt. We hold that it was not a violation of Appellant's constitutional rights of for Nutt to testify regarding his confession. *See Tompkins v. State,* 774 S.W.2d 195, 214–15 (Tex.Crim.App.1987), *aff'd by an equally divided court,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

 Finally, there is no longer a patient-physician privilege in Texas. *State v. Hardy,* 963 S.W.2d 516, 523 (Tex.Crim.App.1997). Appellant has failed to show that his statements to Nutt were either privileged or protected under the Constitution. Appellant's issues six through eleven are overruled.

### Lapel Pins

 In his twelfth and final issue, Appellant contends that the trial court abused its discretion by allowing the district attorney and assistant district attorney to wear lapel pins indicating their support of children during the trial. Appellant contends that the trial judge should not have allowed the prosecutors to wear these pins while his counsel did not. During voir dire both the district attorney and Appellant's attorney mentioned they had four children of their own. Also, they both expressed concern for children during voir dire. With these messages conveyed to the jury at the beginning of the trial, we cannot say that it was an abuse of discretion to allow the prosecutors to continue wearing these pins in support of children throughout the trial while Appellant's attorney did not. The trial judge has broad discretion to deal with the many unexpected situations which may arise during trial. *Johnson v. State,* 583 S.W.2d 399, 405 (Tex.Crim.App.1979). Appellant's issue twelve is overruled.

The judgment of the trial court is *affirmed.*