Affirmed and Memorandum Opinion filed June 25, 2009








Affirmed and Memorandum Opinion filed June 25, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00011-CR

_______________

 

KENNETH RAY STRICKLAND, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 122nd District Court

Galveston County, Texas

Trial Court Cause No. 07CR0510

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

Kenneth
Ray Strickland appeals his conviction for attempted escape using or threatening
to use a deadly weapon.  In five issues, he contends the evidence is legally
and factually insufficient to prove Ause or display@ of a deadly weapon, the jury charge
was fundamentally defective, and the trial court erred by failing to grant a
new trial on the ground that distribution of a form to prospective jurors
regarding their right to donate their compensation to agencies serving crime
victims violated appellant=s constitutional rights.  Because all dispositive issues are
settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4. 








I.  Background

According
to the State=s evidence, on January 25, 2007, appellant was incarcerated in the
Galveston County jail.  Deputy Bruno Pham-Ky was handing lunch trays to inmates
in a secured area.  When Deputy Pham-Ky handed appellant a tray, appellant
advanced toward him and forced the end of a metal rod against his throat. 
Although Deputy Pham-Ky used the word Astabbed@ at trial, the rod caused a bruise or
abrasion but did not penetrate his throat.  Appellant and Deputy Pham-Ky
struggled as appellant tried to push Deputy Pham-Ky toward a restroom.  Deputy
Pham-Ky diverted the rod away from his throat by grabbing appellant=s wrist/hand area.  Another officer
came to Deputy Pham-Ky=s aid and eventually subdued appellant. During the struggle,
Deputy Pham-Ky also sustained bruised fingers on his left hand and a sprained
left wrist.  He received medical treatment the same day.

Appellant
gave a statement to an investigating officer.  Appellant admitted he attempted
to escape but claimed he did not intend to hurt or kill Deputy Pham-Ky. 
Appellant gave several somewhat inconsistent explanations for his actions:  he
was trying to threaten Deputy Pham-Ky; he thought jail officials would not
hinder his escape if he took Deputy Pham-Ky hostage by holding the rod; or he
wanted to take Deputy Pham-Ky=s uniform.

Appellant
was charged with attempted capital murder and attempted escape using or
threatening to use a deadly weapon.  The jury  acquitted him of attempted
capital murder but found him guilty of attempted escape using or threatening to
use a deadly weapon.  In answer to a special issue, the jury also made an
affirmative finding that appellant Aused or exhibited a deadly weapon,
to-wit: a metal rod@ during commission of the offense.  Appellant pleaded Atrue@ to an enhancement paragraph.  The
jury assessed a sentence of ninety-nine years= confinement. 

 

 








II.  Legal-Sufficiency and Jury-Charge Issues

Appellant=s first two issues are interrelated,
and he presents one argument to support both issues.  In his first issue,
appellant states the evidence was legally insufficient to support the finding
of Ause or display@ of a deadly weapon.  In his second
issue, appellant asserts the charge was fundamentally defective because Ait did not require the jury to find
that a deadly weapon was used to >effect= an escape and did not support the
sentence imposed.@  Although appellant refers to legal sufficiency of the
evidence, he actually contends the trial court submitted in the jury charge an
offense that does not exist under Texas law: attempted escape using or
threatening to use a deadly weapon.  Appellant also contends that, even if such
an offense exists, the State Aforfeited that option@ because the charge was improperly
worded.[1] 

A person
commits an offense if he escapes from custody when he is Aunder arrest for, charged with, or
convicted of an offense.@  Tex. Penal Code Ann. ' 38.06(a)(1) (Vernon Supp. 2008). 
This offense is a Class A misdemeanor, subject to certain exceptions.  Id. ' 38.06(b). Pertinent to this case,
the offense is a first-degree felony Aif to effect his escape the actor . .
. uses or threatens to use a deadly weapon.@  Id. ' 38.06(e)(2).  Relative to criminal
attempt, a person commits an offense Aif, with specific intent to commit an
offense, he does an act amounting to more than mere preparation that tends but
fails to effect the commission of the offense intended.@  Tex. Penal Code Ann. ' 15.01(a) (Vernon 2003).  An attempt
offense is one category lower than the offense attempted.  Id. ' 15.01(d).








Appellant
contends the attempt statute cannot be applied to the first-degree felony
offense proscribed under section 38.06(e)(2).  He suggests he was harmed by
submission of the allegedly non-existent offense because he was subjected to a
greater range of punishment than for a lesser offense.  Attempted escape using
or threatening to use a deadly weapon is a second-degree felony.  See
Tex. Penal Code Ann. ' 38.06(e); Tex. Penal Code Ann. ' 15.01(d).  However, because
appellant was previously convicted of a felony, he was subject to punishment as
a first‑degree felon.  See Tex. Penal Code Ann. ' 12.42(b) (Vernon Supp. 2008).

To
determine whether the Legislature intended for the attempt statute to apply to
an offense, we consider the plain meaning of the statutes and apply their
meanings accordingly, unless the language is ambiguous or the result would lead
to absurd consequences.  Strong v. State, 87 S.W.3d 206, 215 (Tex. App.CDallas 2002, pet. ref=d) (citing Boykin v. State,
818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).  As appellant emphasizes, section
38.06(e)(2) requires that the actor use or threaten to use a deadly weapon to Aeffect@ an escape.  Tex. Penal Code Ann. ' 38.06(e)(2) (emphasis added). 
Appellant argues it is impossible for a person to attempt to commit this
offense because Aeffect@ contemplates a completed escape.  We disagree.  Clearly, a
conviction for any offense, except attempt, necessarily contemplates an Aeffected@ offense; i.e. the person completed
the offense.  Nevertheless, a person may be convicted for attempting an offense
even if he fails to Aeffect@ the offense.  See Tex. Penal Code Ann. ' 15.01(a).  Therefore, under the
plain meanings of section 38.06(e)(2) and the attempt statute, a person can
attempt to Aeffect@ an escape using or threatening to use a deadly weapon.








Appellant
cites Strong as authority that not every offense is capable of being
attempted within the meaning of the attempt statute.  In Strong, the
court held that an offense of attempted driving while intoxicated (ADWI@) does not exist under Texas law.  87
S.W.3d at 214B19.  The court recognized that the attempt statute requires Aspecific intent to commit@ the offense attempted whereas the
Legislature has expressly provided that proof of a culpable mental state is not
required for a DWI conviction.  Id. at 217 (citing Tex. Penal Code Ann. ''  15.01, 49.11(a)).  Thus, by
dispensing with the requirement of proving a culpable mental state for DWI, the
Legislature expressed a clear intent that the attempt statute not apply to
DWI.  Id.

The
court further concluded that applying the attempt statute to DWI would lead to
an absurd result.  Id. at 218B19.  A person commits DWI if he A>is intoxicated while operating a
motor vehicle in a public place.=@ Id. at 215 (quoting Tex.
Penal Code Ann. ' 49.04(a)).  AOperating a motor vehicle@ has been interpreted very broadly as
A>the defendant took action to affect
the functioning of his vehicle in a manner that would enable the vehicle=s use.=@  Id.  (quoting Barton v.
State, 882 S.W.2d 456, 459 (Tex. App.CDallas 1994, no pet.)).  Because the
actor need not succeed in causing the vehicle to function to be operating it,
the same conduct constituting attempted DWI would necessarily constitute DWI.  Id.
at 215B16, 218 (citing Freeman v. State,
69 S.W.3d 374, 376 (Tex. App.CDallas 2002, no pet.);  Barton, 882 S.W.2d at 459B60).  Despite engaging in the same
conduct, a person convicted of attempted DWI would not be subject to the more
severe penalties for DWI which are intended to protect the public and deter
commission of the offense.  Id. at 218.  The court concluded that the
Legislature could not have intended the absurd result of vastly different consequences
for essentially the same conduct.  Id. at 218B19.








Appellant
raises no valid argument why the reasoning employed in Strong applies in
this case.  For instance, he presents no argument that the attempt statute
cannot apply to the offense of escape based on the culpable mental states
required for the offense.  Further, unlike Strong, the attempt is not
subsumed within the offense such that any conduct constituting an attempt also
establishes the offense, but the defendant avoids the more severe punishment
for the completed offense.  Appellant urges that the Legislature intended to
reserve the more serious consequences associated with using or threatening to
use a deadly weapon to situations in which the defendant actually completes the
escape.  However, he does not cite any portion of the Penal Code expressing
such intent or any case supporting his position.  In fact, the court of
criminal appeals has affirmed a conviction for the felony offense of Aattempted escape with a deadly weapon@ (under the previous version of the
escape statute later renumbered as section 38.06), although whether such an
offense actually exists was apparently not at issue in that case.  See Whitlow
v. State, 609 S.W.2d 808, 808B10 (Tex. Crim. App. 1980).  Moreover,
recognizing an attempt offense in this case would not be detrimental to the
public welfare or lead to an absurd result.  Rather, appellant is subjected to
more serious consequences than applicable to mere attempted escape because he
used or threatened to use a deadly weapon.    

Appellant
also suggests that, even if the offense of attempted escape using or
threatening to use a deadly weapon exists under Texas law, it was not properly
submitted in the jury charge.  He contends the trial court used the language Aduring the commission of the offense@ instead of Ato effect his escape@ when inquiring about use of a deadly
weapon. However, appellant cites the separate special issue submitted to the
jury; it answered affirmatively when asked whether appellant used or exhibited
a deadly weapon Aduring commission of the offense of which you have found him
guilty.@  

The
language Ato effect his escape@ was correctly used in the portion of the charge first asking
whether appellant committed the offense of attempted escape using or
threatening to use a deadly weapon.  Specifically, the trial court instructed
the jury that Aa person commits escape using or threatening to use a deadly weapon when,
if to effect his escape as defined above, he uses or threatens to use a deadly
weapon@ and also provided the requirements
for finding Aattempt.@  See Tex. Penal Code Ann. '' 38.06(e)(2); 15.01(a). 

Accordingly,
we overrule appellant=s first and second issues.  

 








III.  Factual Sufficiency of Evidence

In his
third issue, appellant contends the evidence is factually insufficient to
support the jury=s finding of Ause or display@ of a deadly weapon.[2] 
In examining a factual-sufficiency challenge, we view all evidence in a neutral
light and set aside the verdict only if (1) the evidence is so weak that the
verdict seems clearly wrong or manifestly unjust, or (2) the verdict is against
the great weight and preponderance of the evidence.  See Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006); Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997).  Although we are permitted to substitute our
judgment for the jury=s when considering credibility and weight determinations, we
may do so only to a very limited degree and must still afford due deference to
the jury=s determinations.  See Marshall,
210 S.W.3d at 625. 








Appellant
does not dispute that he brandished the metal rod but  contends the evidence is
factually insufficient to establish it constituted a deadly weapon.  The jury
was instructed that a deadly weapon is Aanything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.@  See Tex. Penal Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2008). 
Several factors may be considered when determining whether an object is a
deadly weapon:  (1) physical proximity between the victim and the object;  (2)
threats or words used by the assailant;  (3) size and shape of the object;  (4)
the object=s ability to inflict death or serious injury; and (5) the manner in which
the defendant used the object.  In re S.B., 117 S.W.3d 443, 446B47 (Tex. App.CFort Worth 2003, no pet.); Nash v.
State, 115 S.W.3d 136, 140 (Tex. App.CTexarkana 2003, no pet.).  No single
factor is determinative, and each case must be examined on its own facts.  In
re S.B., 117 S.W.3d at 447; Nash, 115 S.W.3d at 140.  Further, the
wounds inflicted may be considered, although it is not necessary the object
inflict any injury before it is declared a deadly weapon.  English v. State,
171 S.W.3d 625, 628 (Tex. App.CHouston [14th Dist.] 2005, no pet.).

In this
case, the evidence demonstrates the metal rod had been removed from its
intended purpose as part of a mop bucket apparatus.  During normal use, the rod
would have a plastic bolt on each end.  A plastic bolt had been removed from
one end of the rod at issue leaving bare threaded metal.  The rod was seven and
a half inches long.  Deputy Pham-Ky testified appellant pushed the rod against
his throat with such force that he thought his neck had been broken and he Awas dead.@  He feared appellant would kill him
if he did not fight back. Deputy Pham-Ky opined that a rod of this type would
be a deadly weapon if Asufficiently shoved into a person=s throat near the jugular or eye
socket with enough force.@              Appellant contends Deputy Pham-Ky exaggerated
or fabricated his claim that appellant Ajammed@ the rod into his throat.   Appellant
suggests the bruise to Deputy Pham-Ky=s throat was not caused by appellant=s actions because photographs showing
the injuries to Deputy Pham-Ky=s throat and left hand were taken at different times and he
did not complain to emergency room personnel about any throat injury, although
a nurse later documented the injury.  However, the fact these photographs were
taken at different times does not outweigh Deputy Pham-Ky=s testimony that he incurred the
throat bruise as a result of appellant=s actions.  Moreover, the jury could
have rationally inferred Deputy Pham-Ky did not complain of the throat bruise
to emergency room personnel because the injury to his hand caused more damage
and was his primary concern.  








Appellant
also argues he would have penetrated and caused Avery serious damage@ to  Deputy Pham-Ky=s throat if his description of the
force used were credible.  However, Deputy Pham-Ky believed the rod did not
penetrate his throat because he moved backwards in the same direction as the
force and then used sufficient strength to divert the rod away from him. 
Accordingly, the jury could have reasonably concluded that the rod Ain the manner of its use or intended
use [was] capable of causing death or serious bodily injury,@ but Deputy Pham-Ky prevented such
consequences by struggling with appellant. 

Finally,
appellant suggests the jury must have rejected Deputy Pham-Ky=s testimony by acquitting appellant
of attempted capital murder.  However, the jury could have concluded that
appellant intended to inflict serious bodily injury to facilitate his escape
but did not intend to kill the deputy.  Alternatively, it is not necessary the
actor intend death or serious bodily injury; only that the actor intends to use
the object in a manner rendering it capable of causing death or serious bodily
injury.  Id. at 628.  Therefore, the jury could have inferred appellant
used the rod in a manner that rendered it capable of causing serious bodily
injury or death regardless of whether he intended to do so.  Accordingly,
acquittal on the attempted-capital-murder charge does not indicate the jury
found Deputy Pham-Ky lacked credibility regarding the amount of force used by
appellant.  Because the evidence is factually sufficient to support the finding
that appellant used or threatened to use a deadly weapon as an element of the
offense and the affirmative finding that he used or exhibited a deadly weapon,
we overrule his third issue.  

IV.  Distribution of Form to Jury Panel

In his
fourth and fifth issues, appellant contends the trial court erred by failing to
grant a new trial on the ground that distribution of a form to prospective
jurors regarding their right to donate their compensation to agencies serving
crime victims violated appellant=s federal and state constitutional
rights. 

Texas
Government Code section 61.003 requires distribution of such a form:

(a) Each
person who reports for jury service shall be personally provided a form letter
that when signed by the person directs the county treasurer to donate all, or a
specific amount designated by the person, of the person=s daily reimbursement under this chapter to:








(1) the compensation to victims of crime fund under Subchapter B,
Chapter 56, Code of Criminal Procedure;

(2) the child welfare board of the county appointed under Section
264.005, Family Code;

(3) any program selected by the commissioners court that is operated by
a public or private nonprofit organization and that provides shelter and
services to victims of family violence;  or    

(4) any other program approved by the commissioners court of the
county, including a program established under Article 56.04(f), Code of Criminal
Procedure, that offers psychological counseling to jurors in criminal cases
involving graphic evidence or testimony.

Tex. Gov=t Code Ann. ' 61.003(a) (Vernon Supp. 2008).  

Appellant
first raised his constitutional complaint in a Asupplemental@ motion for new trial.  He attached a
form purportedly distributed by the district clerk to prospective jurors in his
case, which stated in pertinent part:

Chapter 61,
Government Code, gives you the right to donate all or a specific designated
amount of your jury payment to the Crime Victim=s Compensation Fund or the County=s
Child Welfare Board.  In addition to these two organizations, the Commissioner=s Court may select any other program operated by a
public or private nonprofit organization that provides shelter and services to
victims of family violence.

Several organizations
were then listed: Advocacy Center for Children of Galveston County, Resource
& Crisis Center of Galveston County; The Children=s Center, Inc.; Crime Victim=s Compensation Fund; Children=s Protective Services Board; Prevent
Blindness Texas Gulf Coast; Laura Recovery Center Foundation; and Boys &
Girls Clubs of Galveston County.  Appellant=s motion for new trial was overruled
by operation of law.[3]  








Appellant
contends his constitutional rights were violated by distribution of the form
because section 61.003 is unconstitutional, both facially and as applied to
him.  When confronted with an attack on the constitutionality of a statute, we
presume the statute is valid and that the Legislature has not acted
unreasonably or arbitrarily.   Rodriguez v. State, 93 S.W.3d 60, 69
(Tex. Crim. App. 2002).  The burden rests on the individual challenging a
statute to establish its unconstitutionality.  Id.  A facial challenge
to a statute is the most difficult to mount successfully because the challenger
must establish that no set of circumstances exists under which the statute will
be valid.  Santikos v. State, 836 S.W.2d 631, 633 (Tex. Crim. App.
1992).  Because a statute may be valid as applied to one set of facts and
invalid as applied to another, the challenger must first show the statute is
unconstitutional as applied to him in his situation; that the statute may be
unconstitutional as applied to others is insufficient to support a facial
challenge.  Id. 

Appellant
argues that distribution of the form caused juror bias against him and thus
violated his constitutional rights to due process, due course of law, and trial
by an impartial jury.  Appellant has presented no evidence that any jurors who
sat on his case actually donated their compensation.  Instead, appellant seems
to contend that mere distribution of the form caused juror bias.  As appellant
notes, the enhancement paragraph for purposes of his punishment involved a
previous conviction for aggravated sexual assault of a child.  Thus, appellant
apparently claims that the form caused the jurors to be biased against him when
assessing punishment for the charged offense by informing them of their right
to donate to agencies serving child victims.  








However,
several courts have rejected similar constitutional complaints even when some
panel members actually donated their compensation to agencies serving crime
victims pursuant to section 61.003.  For example, in Harvey v. State,
123 S.W.3d 623, 627 (Tex. App.CTexarkana 2003, pet. ref=d) and Ruckman v. State, 109
S.W.3d 524, 526 (Tex. App.CTyler 2000, pet. ref=d), the charged offenses were
aggravated sexual assault of a child.  The defendants argued that jurors who
are sufficiently concerned about victims of crime or children to donate their
compensation are impliedly biased against an alleged child abuser.  See
Harvey, 123 S.W.3d at 631; Ruckman, 109 S.W.3d at 527B28.  When rejecting these complaints,
the courts recognized that Athe doctrine of implied bias is limited in application to
those extreme situations where the relationship between a prospective juror and
some aspect of the litigation is such that it is highly unlikely that the
average person could remain impartial in his deliberations under the
circumstances.@  Harvey, 123 S.W.3d at 633; Ruckman, 109 S.W.3d at 528.  A
defendant=s entitlement to impartial jurors on the question of whether he committed
the crime charged is entirely distinct from the question of whether the crime
itself is one that arouses their moral passion.  Harvey, 123 S.W.3d at
632; Ruckman, 109 S.W.3d at 528.  A defendant is not entitled to demand
a jury impartial to the underlying crime itself.  Harvey, 123 S.W.3d at
632; Ruckman, 109 S.W.3d at 528.  AA juror may deplore the crime
underlying the action in which he or she has been called on to serve, even
donating to general funds designed to assist complainants of that crime, and
still be able to impartially weigh the evidence presented as to a defendant=s guilt or innocence and, if the
defendant is found guilty, fairly assess punishment.@  Harvey, 123 S.W.3d at 633.

Similarly,
in Boone v. State, 60 S.W.3d 231, 236B37 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d), the defendant in a murder trial
complained that merely informing prospective jurors about their option to
donate caused bias by improperly heightening their sympathy for crime victims. 
Relying on Ruckman, our court rejected the contention that the jurors= knowledge of a victims= compensation fund or their donations
thereto demonstrated bias.  Id. at 237.








Based on
the reasoning of the above-cited cases, we reject appellant=s suggestion that the jurors= knowledge of their right to donate
to agencies serving child victims somehow caused them to be biased against
appellant when determining the weight to assign his previous conviction for
aggravated sexual assault of a child in assessing punishment for the charged
offense. Because appellant fails to show section 61.003 is unconstitutional as
applied to him, he also cannot demonstrate the statute is unconstitutional on
its face. 

Finally,
appellant cites Valenzuela v. St. Paul Insurance Co., 878 S.W.2d 667,
670 (Tex. App.CSan Antonio 1994, no pet.) to support his argument. However, Valenzuela
is distinguishable from the current case because its court criticized allegedly
inappropriate comments made by the district judge to potential jurors.  Id.

In sum,
the trial court did not err by failing to grant appellant=s motion for new trial.  We overrule
appellant=s fourth and fifth issues.  

We
affirm the trial court=s judgment.

 

 

/s/        Charles
W. Seymore

Justice

 

Panel consists of Justices Yates, Seymore, and Boyce.

Do Not Publish C
Tex. R. App. P. 47.2(b).









[1]  Appellant=s
first argument seems more like a challenge to the indictment because the jury
charge merely tracked the offense as alleged in the indictment.  Appellant did
not object to the indictment.  See Tex. Code Crim. Proc. Ann. art.
1.14(b) (Vernon 2005) (providing, defendant waives right to object to defect,
error, or irregularity of form or substance in indictment and may not raise
objection on appeal if he failed to object before commencement of trial). 
Nonetheless, he also failed to object to the jury charge.  If a defendant fails
to object to error in the jury charge, a reviewing court will reverse Aonly if the error is so egregious and created such
harm that he has not had a fair and impartial trial.@  Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984).  Appellant does not mention his failure to object or the
egregious-harm standard.  However, we need not decide whether he waived error
or determine the applicable harm standard because we reject his contentions. 





[2]  It is not clear whether appellant challenges the
finding that he used or threatened to use a deadly weapon as an element of the
offense or the affirmative finding that he Aused
or exhibited@ a deadly weapon in response to the separate special
issue, or both.  Accordingly, we will address them together.





[3]  In appellant=s
original motion for new trial, he presented no issue regarding the
constitutionality of this statute.  His Asupplemental@ motion for new trial was untimely because it was
filed more than thirty days after the trial court imposed sentence in open
court.  See Tex. R. App. P. 21.4(b).   Further, appellant did not file
any affidavit, or cite any place in the record, showing the form at issue or
any similar form was actually distributed to prospective jurors.   See
Klapesky v. State, 256 S.W.3d 442, 454 (Tex. App.CAustin 2008, pet. ref=d) (recognizing, when the grounds for new trial are outside the record,
a defendant must support his motion by his own affidavit or affidavit of
someone with knowledge of the facts and such a motion without supporting
affidavit is not proper pleading and is fatally defective).  Nonetheless, even
if the supplemental motion had been timely filed and we presumed the clerk
complied with section 61.003 and distributed the attached form or similar form,
we conclude the statute is not unconstitutional.